**Bessie Myrick McCLUNG, Plaintiff-Respondent,**

v.

**Vallie Marie WHITE and Bob Dee Casebolt, Defendants-Appellants.**

**No. 23867.**

Kansas City Court of Appeals.

Missouri.

Nov. 25, 1964.

Motion for Rehearing or Transfer to Supreme Court Denied Feb. 1, 1965.

Application to Transfer Denied March 8, 1965.

Brown, Douglas & Brown, R. A. Brown, St. Joseph, for appellants.

Edward L. Simmons, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, Mrs. McClung, sued defendants, Mrs. White and Mr. Casebolt, for damages growing out of a collision between two automobiles owned and operated by the respective defendants. From a judgment in favor of plaintiff and against both defendants in the sum of $6,000.00, Mrs. White appeals. We will refer to her as defendant.

The collision occurred on December 2nd, 1960, at 4:00 P.M. Visibility was good. The Casebolt car was travelling west on

Highway 36, at a speed of from fifty to sixty miles per hour. Plaintiff and another lady were passengers in the automobile of defendant White. They were travelling east on Highway 36. The Casebolt vehicle side swiped the White car at a point west of the west end of Third Fork Bridge, some miles east of St. Joseph, Missouri. The speed of the White vehicle was from forty-five to fifty miles per hour.

Highway 36 is hard surfaced, twenty-two feet wide, with a line along the center. The shoulders are sodded and smooth. The south shoulder is six feet wide along-side the area involved, and was dry. Defendant's automobile was five feet ten inches wide and a few inches more than sixteen feet in length. Both cars were in good mechanical condition. The bridge is one hundred twenty-four feet long and twenty-two feet wide. The roadway is straight and level for a distance of several hundred feet both east and west of the bridge. Debris from the collision, consisting of glass, (the left headlight of the Casebolt car was broken) was centered at a point one hundred thirty-five feet west of the west end of the bridge. The actual collision damage to the White car was on its left side, commencing on the left door and extending to the rear some distance—somewhat of a scrape or scratch. There was no damage to the front end of the car except that caused by its eventual collision with the south abutment of the bridge, after having been struck by the Casebolt car. The damage to the Casebolt car was confined to its left side. The above facts are undisputed in the evidence.

■ Defendant contends that no submissible case was made, and that the verdict is against the weight of the credible evidence. We must consider the evidence in the light most favorable to plaintiff, treat as true the plaintiff's testimony and give her the benefit of all favorable inferences from all of the evidence, and we must disregard all of defendant's testimony conflicting with that of

plaintiff. Morris v. Alexander, Mo.App., 275 S.W.2d 373, 375–376.

The transcript consists of five hundred pages. It includes the testimony of several witnesses, given at this trial, interrogatories, and depositions of some of these same witnesses taken in this case and in the trial of another case growing out of this collision. There are some inconsistencies in the testimony of some witnesses, and some wide variances in estimates of distances involved. However, the evidence as a whole was for the jury to evaluate. The jury could believe what it considered to be the credible testimony and reject that which it considered incredible or false. We find no such contradictions as would result in destroying the probity of plaintiff's evidence. It is our duty to determine whether or not there is substantial evidence in the record upon which the jury could have based its verdict and, if there is, we must affirm the judgment.

■ Defendant testified by deposition and in court to the effect that, when she first saw the Casebolt car, it was about ready to come onto the east end of the bridge and that it about two hundred yards distant. She stated it crossed over the center line, to the south lane at that time and continued on that course. She also stated that it was, at that time, about one hundred feet east of the bridge. She stated that, at the time she first saw the car, she was proceeding at a speed of from forty-five to fifty miles per hour; that she did not increase or decrease speed, nor did she swerve from her course. There was evidence to the effect that the left side of defendant's car was about one foot south of the center line of the pavement; that the Casebolt car was weaving before it reached the bridge; that it came across to the south of the center line of the road and continued there from that time until the collision occurred, with its left wheels about ten inches south of the center line; that, when it first crossed the line, defendant said: "what is that darn fool trying to do?"; that,

at that time, the Casebolt car was from two hundred to two hundred fifty feet east of the bridge; and that defendant was three hundred feet west of the bridge. The debris was centered at a point one hundred thirty-five feet west of the bridge and Mr. Casebolt stated that the point of impact was one hundred feet west of the bridge. In short, there was substantial evidence from which the jury could have found that defendant saw the Casebolt car cross into her lane of travel at a point more than six hundred feet east of her car, and that she observed it as it continued travelling toward her, with its left wheels ten inches across the line, for a distance of two hundred fifty feet before the cars collided. The physical facts are that, to defendant's right was four feet of smooth pavement plus six feet of smooth dry shoulder. The evidence was that defendant's reaction time was average. The jury could have believed, from the evidence, that defendant continued driving straight down the road, with full knowledge that a collision would occur if both cars continued their respective courses, and that she had sufficient time and room to swerve a foot to the right, with safety to herself, her passengers, and her automobile, thereby avoiding a collision.

Plaintiff submitted on defendant's primary negligence in failing to swerve her car. Under the evidence most favorable to plaintiff a submissible case was made on this theory. Morris v. Alexander, supra, 275 S.W.2d 376–377. Defendant, in her brief, cites some humanitarian cases. The case at bar is based on primary negligence. Morris v. Alexander, supra. In Yarrington v. Lininger, Mo., 327 S.W.2d 104, the court discussed humanitarian and primary negligence, and held that no submissible case was made on the humanitarian theory as to one of the defendants. The court held, however, (327 S.W.2d l. c. 111) that a submissible case on primary negligence was made under the evidence. The facts are somewhat analogous to the facts in evidence in this case.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court. All concur.